As the testimony does not sustain the charge of neglect and dilapidation alleged by plaintiffs, their suit must fail on this point.

Turning now to a consideration of the alleged waste of the cash in the hands of the defendant, we find the cash to be in a condition contrary to that which plaintiffs allege it to be in. The widow Dionne was put in possession, as usufructuary, of $12,515.73 belonging to her children, and she voluntarily turned over to these plaintiffs, together with two other children, the sum of $9,554.96, leaving a balance in her hands belonging to them of $2,960.77, and the evidence shows that she has cash in hand amounting to $4,240. There has evidently been no waste of cash. It is shown, besides, that defendant has loaned to the husband of one of the plaintiffs the sum of $8,000 of her own money.

Plaintiffs having failed to sustain their allegations, there must be judgment in favor of defendant.

Judgment affirmed, with costs.

O'NIELL, J., takes no part.

<hr/>

(65 South. 232)

No. 20303.

BEATTY v. SHARP.

(May 11, 1914.)

*(Syllabus by the Court.)*

COURTS (§ 224*)—SUPREME COURT—JURISDICTION—VALUE IN CONTROVERSY.

The value of the land, the possession of which will be affected by the establishment of a boundary, determines the jurisdiction of this court for the purposes of an appeal, and, where it does not exceed $2,000, exclusive of interest, the appeal will be ordered transferred, within a time limit, to the Court of Appeal for the proper circuit.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608, 609, 614, 616, 617; Dec. Dig. § 224.*]

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; P. E. Edrington, Judge.

Action by Mary Beatty against Hugh H. Sharp. Judgment for plaintiff, and defendant appeals. On motion to dismiss. Case transferred to Court of Appeal.

L. H. Marrero, Jr., of New Orleans, for appellant. W. W. Wall and Prentice E. Edrington, Jr., both of New Orleans, for appellee.

## On Motion to Dismiss Appeal.

MONROE, C. J. This is an action of boundary, in which plaintiff alleges that she is the owner of certain land which she describes, as follows:

"A certain tract of land, with all the buildings and improvements thereon, * * * measuring about 1¾ arpents, more or less, front on the Mississippi river, by a depth of 79 arpents, more or less, at which depth said tract has a width of 6 arpents and 7½ toises, together with the right of batture and alluvion and riparian rights on the river front of said property, the said tract of land being bounded above * * * by the property of Hugh H. Sharp, and below by the property of Robert Klein, and, together with 70 acres, more or less, of swamp land, adjoining and lying immediately in the rear * * * bounded * * * by lands of H. H. Sharp and Robert Klein, less the tract sold by Mary Beatty to Hugh H. Sharp, measuring 50 feet front on the Mississippi river and 57 feet on the Texas & Pacific Railway Company's right of way, 80 arpents deep, more or less, as well as the undivided one-eighth interest in * * * the 70 acres of swamp in the rear of the firstly described property."

Plaintiff alleges that the upper boundary of the property so described, separating it from the property of the defendant, has never been established, and she prays that the necessary steps be taken, contradictorily with defendant, for its establishment. Surveyors were accordingly appointed, by whom a survey was made, which, after hearing, was homologated by a judgment, from which defendant has appealed. Plaintiff moves to dismiss the appeal, on the ground that the amount in dispute does not exceed $2,000. We take it that the total area of the tract above described—highland and swamp—is about 225 acres, and it appears that on June 6, 1910 (about a year before the institution of this suit), plaintiff acquired the whole tract for $12,000, and (on the same day, and in accordance with an agreement previously made) reconveyed one-eighth of it to defendant, for $1,500, which would appear to fix the average value at, say, $53.20 per acre. The only other evidence on that subject is the testimony of Mr. Zander, surveyor, who was examined with a view of ascertaining the difference in acreage and value which will result, according as the survey which was homologated by the judgment appealed from is adopted as establishing the boundary, or as the views of the defendant are adopted. His examination, at one place, runs as follows, to wit:

"Q. Mr. Zander, what is the difference in acreage, approximately, between the tract owned by Robert W. Sharp and the tract owned by H. H. Sharp? A. I haven't got the least idea; I was never asked to figure it out. Q. It is considerable, though isn't it? A. It is considerable. Q. It is more than 10 acres? A. Sure. Q. Do you know the value of property in that locality? A. I do not, sir. Q. Between the railroad and the river? A. I do not, sir. Q. Is that property worth more than $100 an acre? A. I think it is. Q. It is worth as much as $200? A. I suppose it is worth $200; yes, sir. Q. The difference between that side and this side would be approximately $2,000? A. I could not tell."

At another place in his examination he rather gives the impression that the placing of the boundary in the one place or the other would make a difference (estimated) of about 18 acres, of swamp land. Thus we find:

"Q. When you say that the land is worth $200 an acre, do you mean the land out in the woods, or do you mean the front lands? A. The front lands. Q. Then, when it is suggested that $2,000 of property would be involved there, you mean $200 an acre on the whole tract? A. I never said $2,000; I said $200 an acre. Q. Well now, assuming that 18 acres would be cut off there, if the line is established at north 26, east, how much is that land worth that is cut off? A. Well, if there is any timber on it, which I am not aware of at this time, swamp land don't figure no more than $3, or $4, or $5 an acre, if it is not in a body, and I don't know exactly what value any one might put on it—to that land that runs beyond the railroad—excepting near the railroad. * * * I don't

think it would average more than $10 from the railroad out."

It appears therefore that the value of the land "between the railroad and river" has nothing to do with the question of jurisdiction here presented. But, even if it were otherwise, though we have no doubt that the witness was sincere in "supposing" it to be worth $200 an acre, and in estimating, at 18 or 19 acres, the quantity of (swamp) land that will be affected by the establishment of the boundary, according to the survey that was under consideration when he testified, we have as little reason to doubt his sincerity, and less to doubt the accuracy of his information, when he said that he did not know the value of land in that locality, and had not the least idea how many acres would be so affected. Counsel for appellant says in his brief:

"We submit that, the amount involved having been established by the plaintiff and appellee at not less than $2,000, * * * he cannot now successfully contend that the suit should be dismissed for the reason that the amount is not sufficient to give the court jurisdiction."

For the reasons stated above, we are of opinion that it has not been established that the amount involved is not less than $2,000. If that much had been established, however, and nothing more, it would be sufficient to oust the jurisdiction of this court, which extends only to "cases where the matter in dispute * * * shall exceed $2,000, exclusive of interest" (Constitution, art. 85), and, though the suit is not necessarily to be dismissed on that account, it must be transferred to another tribunal. Act No. 56 of 1912.

It is therefore ordered that this cause be transferred to the Court of Appeal for the parish of Orleans within ten days from the date upon which this judgment shall become final; otherwise, that the appeal be dismissed.